UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Robin Parker, Laparis Davis
Plaintiffs,

v.

STATE OF TEXAS,
TEXAS ATTORNEY GENERAL'S OFFICE,
CHILDREN'S MEDICAL CENTER DALLAS AND CHILDREN'S MEDICAL CENTER PLANO,
LEGAL AID OF NORTHWEST TEXAS,
MEGAN NORDYKE,
JUDGE LADEITRA ADKINS,
JUDGE DENNISE GARCIA,
ETHEL L. JERNIGAN,
TIFFANY WHITE,
LISA HARBOUR,
SUSAN SYLVESTER,
LAZAT SHANTA WILSON,
SYLVESTER WILLIAM BROWN II
Defendants.

Case No.: 3-25CV0592-X

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

INTRODUCTION

1. Nature of the Action:

This is an action for compensatory and punitive damages, injunctive relief, and declaratory judgment under **42 U.S.C. § 1983, 18 U.S.C. § 241, 18 U.S.C. § 1201, 31 U.S.C. §§ 3729–3733 (False Claims Act)**, and related statutes. This action arises from systemic discrimination, civil rights violations, and a conspiracy to defraud federally funded programs including **Medicaid, SSI, Food Stamps**, and **Section 8 Housing**.

2. Whistleblower Allegations:

Plaintiff brings this action as a **whistleblower** under the **False Claims Act**, exposing a scheme by Defendants to fraudulently obtain financial incentives and reimbursements from federal programs by violating the rights of Plaintiff and her special needs daughter.

3. **Demand for Relief:**

Plaintiff seeks a **global settlement** of **$350 million** for compensatory and punitive damages, policy changes within implicated organizations, ADA compliance reforms, and the establishment of a **special needs trust** to provide for her daughter's lifelong medical and educational needs.

---

## JURISDICTION AND VENUE

4. **Jurisdiction:**

This Court has jurisdiction pursuant to **28 U.S.C. § 1331** (federal question), **28 U.S.C. § 1343(a)(3)** (civil rights), and the **False Claims Act (31 U.S.C. §§ 3729–3733)**.

5. **Venue:**

Venue is proper in this judicial district under **28 U.S.C. § 1391(b)**, as the events giving rise to the claims occurred in **Dallas, Texas**, and Defendants are located and conduct business within this district.

---

## PARTIES

6. **Plaintiffs:**

Plaintiffs are residents of **Texas**, parents of a special needs child, and **whistleblowers** under the False Claims Act.

7. **Defendants:**

- **State of Texas:** Through the **Texas Attorney General's Office**, participated in discriminatory practices and financial misconduct.

- **Children's Medical Center Dallas and Plano:** Violated healthcare privacy laws, ADA compliance, and supported an unlawful custody arrangement.

- **Legal Aid of Northwest Texas:** Actively facilitated discriminatory practices and failed to advocate for Plaintiff's rights.

- **Individual Defendants:**

    - **Judge Ladeitra Adkins** and **Judge Dennise Garcia:** Demonstrated bias and failed to provide ADA accommodations during court proceedings.

    - **Ethel L. Jernigan:** As a retired social worker, violated healthcare

privacy laws and enabled fraudulent activities.

- **Tiffany White, Lisa Harbour, Susan Sylvester:** Represented the Texas Attorney General's Office and engaged in actions that contributed to the fraudulent scheme and discrimination.

- **Lazat Wilson and Sylvester Brown:** Perpetrated a scheme to defraud the government through custody manipulation and exploitation of federally funded programs.

---

**Additional Factual Allegations: Fraudulent Access to Public Benefits and Failure to Accommodate Disabilities**

**Fraudulent Acquisition of Government Benefits in 2012**

In or about 2012, Defendant **Lazat Shanta Wilson** unlawfully obtained **public assistance benefits** for Plaintiff's minor daughter, **E.D.**, by falsely holding herself out as the child's caretaker despite having no **legal custody** or **guardianship** rights. Specifically, Wilson applied for and received **Temporary Assistance for Needy Families (TANF)** cash benefits, **Supplemental Nutrition Assistance Program (SNAP)** food benefits, and **Medicaid** health coverage on E.D.'s behalf under false pretenses. At that time, Plaintiff was the child's sole legal parent and had **never relinquished custody** to Wilson; thus, Wilson **lacked standing or any lawful authority** to seek those benefits for E.D. This **fraudulent misrepresentation** to state agencies not only violated state and federal law but also set in motion unjust legal action against Plaintiff. Because Wilson obtained government benefits through fraud, the Texas Office of the Attorney General ("OAG") – which automatically intervenes to recoup public assistance via child support – **wrongfully opened a Title IV-D child support case** against Plaintiff and her husband. In short, Wilson's fraud triggered baseless child support proceedings treating Plaintiff as if she had abandoned or failed to support her child, when in fact any **deprivation of support** was caused by Wilson's own unlawful actions. The resulting OAG enforcement action, predicated entirely on Wilson's false benefit claim, was **improper and without legal foundation**, causing Plaintiff to be unjustly hauled into court and assessed child support obligations for a situation **manufactured by Wilson's deceit**.

**OAG's Failure to Investigate Wilson's Custody Status and Background**

From the outset of these proceedings, the **Texas OAG** failed to exercise due diligence and instead prioritized financial incentives under **Title IV-D of the Social Security Act** over the truth of E.D.'s custody situation. **Upon information and belief,** the OAG receives federal funding and performance incentives for aggressive child support enforcement, creating a **conflict of interest** that influenced its conduct in this case. Rather than verifying whether Wilson had any legal rights to E.D. or investigating the circumstances of her benefits application, OAG personnel (including Defendant **Tiffany White**, a Title IV-D prosecutor) **rubber-stamped Wilson's claims** and relentlessly pursued Plaintiff for support. The OAG opened and prosecuted a child-support enforcement action naming Wilson as the child's custodian **without ever confirming a court order granting Wilson custody**. This dereliction of duty ignored clear red flags: **Wilson had a lengthy criminal history** – including arrests or convictions for **violent offenses and fraud** (such as **attempted murder, assault, and drug-related crimes spanning 1992–2021**) – which should have raised serious concerns about her fitness and credibility. Had the OAG performed a basic background check or demanded proof of

legal custody, it would have discovered that **Wilson's custody claim was illegitimate** and that entrusting E.D. to her posed a grave risk. Instead, driven by the prospect of **federal reimbursement and Title IV-D funds** tied to collecting support, the OAG **aided and abetted Wilson's scheme** by initiating legal actions against Plaintiff and her husband as obligors. OAG attorneys and staff **aggressively pursued child support payments** from Plaintiffs – garnishing wages and threatening enforcement penalties – all while willfully **turning a blind eye** to Wilson's lack of legal custody and her disqualifying criminal background. This failure to investigate or act impartially amounted to a **gross abuse of the public trust** and denied Plaintiff fundamental fairness in the support proceedings.

March 12, 2014: Emergency Custody Order Sought by Wilson and Subsequent Arrest

On **March 12, 2014**, Defendant **Lazat Wilson** and Sylvester Brown attempted to obtain an emergency **ex parte custody order** in the **302nd Judicial District Court**, Dallas County, Texas, pursuant to Texas Family Code §159.606. At that exact time, Plaintiff was already present at the Dallas County courthouse researching legal documentation in the law library, desperately seeking resources and assistance to prevent Wilson from unlawfully taking custody of her daughter. Plaintiff had repeatedly informed court officials and authorities about Wilson's ongoing fraudulent scheme, but her concerns had been systematically ignored.

While Plaintiff was conducting this research, the law librarian informed her that a custody hearing was simultaneously occurring on the fourth floor concerning her daughter. Plaintiff immediately went to the courtroom where Wilson was attempting to secure emergency custody without Plaintiff's knowledge or consent. Upon arriving, Plaintiff promptly informed the **court bailiff** of an active **blue warrant** (parole violation warrant) against Wilson. Acting swiftly upon Plaintiff's information, courthouse law enforcement arrested Wilson on the spot. Wilson was subsequently incarcerated on the outstanding warrant, exposing to the court her significant criminal history and pattern of deceit. Sylvester brown scurried out of the court room because he has nothing to do with the case but was also assisting in interference with child custody concerning E.D

The court, recognizing Wilson's immediate incarceration and inability to proceed, informed Plaintiff to attend a subsequent hearing to formally resolve custody issues. This incident on **March 12, 2014**, demonstrates Plaintiff's diligent and persistent efforts to protect her child from Wilson's fraudulent and abusive actions, despite being repeatedly disregarded by the court system. Acting on this information, law enforcement **arrested Wilson on the spot** at the courthouse for her outstanding warrant. Despite Wilson's arrest – which underscored the serious legal and safety issues surrounding her – Judge Garcia did not return E.D. to her mother. Instead, in Plaintiff's **presence**, Judge Garcia attempted to place E.D. into **foster care** or other state custody, rather than reunite her with Plaintiff, the child's fit and available parent. This extreme measure **disregarded Plaintiff's parental rights** and deviated from the legal presumption that a parent has first priority to custody of their child over a non-parent.

March 3, 2016: Default Judgment Entered Against Plaintiff During High-Risk Pregnancy

On **March 3, 2016**, a critical custody hearing was scheduled concerning Plaintiff's daughter, **E.D.**, in the **303rd Judicial District Court**, Dallas County, Texas. At this time, Plaintiff was experiencing a **high-risk pregnancy**, which significantly impacted her ability to attend court. As of **March 2, 2016**, Plaintiff was **24 weeks pregnant** and had been advised by her medical team to remain on **strict bed rest**. Due to the severity of her condition, a **nurse visited Plaintiff's home weekly** to administer **steroid injections**, including an injection the day before the scheduled hearing, to support her

pregnancy and reduce risks to the unborn child.

Despite these medical circumstances, Plaintiff was unable to secure **childcare for her other children** and could not physically attend the **March 3, 2016 hearing**. Although the court had been informed of Plaintiff's **medical condition** and **safety concerns**, **Judge Dennise Garcia** proceeded with the hearing **in absentia**. Without considering Plaintiff's legitimate **medical needs** or providing any **reasonable accommodation**, the court issued a **default judgment** against her, awarding custody to **Lazat Wilson** while incarcerated.

When Plaintiff attempted to follow up with the court, she learned that the **case file had been sealed**, restricting her access to crucial information about the default order. Court staff provided only minimal information through journal entries, which stated:

- "Mother did not appear, father unreachable, default granted to Wilson, subject to agreement with OAG to be proved up at a later date."

- The records did not acknowledge **Wilson's previous incarceration** or the **circumstances of Plaintiff's absence**, leading to a **misleading and incomplete record**.

Plaintiff was later contacted by **Tiffany White**, a representative of the **Texas Office of the Attorney General**, who attempted to **coerce Plaintiff into signing a proposed order** that would retroactively approve **Judge Garcia's ruling**. Despite **Plaintiff's objections** and **refusal to sign**, Judge Garcia openly declared, **"I don't care if you sign it, I'm signing it,"** proceeding to formalize the order unilaterally on **July 20, 2017**.

The court's actions not only violated Plaintiff's **due process rights** but also failed to provide **reasonable accommodations** under the **Americans with Disabilities Act (ADA)**, as Plaintiff's **high-risk pregnancy** and **medical needs** were not considered in the **scheduling or conduct of the hearing**. The resulting **default order** contributed to a prolonged period of **custody interference**, emotional distress, and ongoing financial and legal harm to Plaintiff and her family.

**Judicial Misconduct and Coercion in 2017 Custody Proceedings**

Plaintiff's case reached a climax of irregularity and coercion during the final custody modification proceedings in 2017. After multiple continuances and procedural delays, a final hearing in Cause No. DF-13-00814 was held on May 24, 2017 in Judge Garcia's court to determine permanent conservatorship of E.D. Leading up to this hearing, Judge Garcia – in concert with OAG attorney Tiffany White and others – **pressured Plaintiff to sign a proposed custody order** that would award **permanent managing conservatorship** of E.D. to Wilson. This proposed order contained **false and fraudulent recitals** (including the fiction that Plaintiff had voluntarily relinquished her rights) which Plaintiff vehemently refused to endorse. In an act of judicial overreach, Judge Garcia responded by **improperly resurrecting a previously dismissed proceeding** to force the outcome: she **removed an "802 dismissal"** that had been entered (a dismissal for want of prosecution or expiration of time) in order to retain jurisdiction and push through Wilson's custody claims. During a court session, Judge Garcia made clear that Plaintiff's consent was irrelevant, telling her in open court: **"I don't care if you sign it, I'm signing it."** The judge then proceeded to sign a final **Order in Suit to Modify Parent-Child Relationship** (dated June 24, 2017) granting Wilson sole managing conservatorship of E.D. and ordering Plaintiff and her husband to pay monthly child support ($173 from Plaintiff and $186 from Mr. Davis). This final order was achieved through **coercion and procedural manipulation**, effectively depriving Plaintiff of a fair trial on the merits. It also **flouted**

Texas law designed to protect families: for example, no meaningful **background check** or **home study** was ever conducted on Wilson despite her known criminal history, contrary to the child's best interests and Tex. Fam. Code § 153.002 (which requires courts to ensure any conservatorship is in the **best interest of the child**). Immediately after securing this fraudulent custody order, Wilson **violated the terms of the order and Texas Family Code** by removing E.D. from Dallas County without court permission. The 2017 order (as is standard) either explicitly or implicitly required that the child's primary residence remain within the court's jurisdiction, yet Wilson **unilaterally relocated the child to Sherman, Texas** (Grayson County). This **extrajudicial move** not only defied the court's authority and the geographic restrictions on E.D.'s residence, but also deprived Plaintiff of the ability to exercise her visitation rights and maintain regular contact with her daughter. Judge Garcia and the OAG, despite knowing of Wilson's relocation in violation of the order, took **no prompt action to enforce compliance** or to safeguard Plaintiff's rights, leaving Wilson's misconduct unchecked. The 2017 proceedings thus were tainted by **judicial misconduct** and **conspiracy to deny Plaintiff a fair hearing**, resulting in an unjust order that emboldened Wilson to continue flouting the law.

**Failure to Accommodate Disabilities and Ongoing Harm to Child and Mother**

Defendants' actions not only violated Plaintiff's custodial rights but also **systematically failed to accommodate the disabilities** and special needs present in this family, in contravention of the **Americans with Disabilities Act (ADA)** and related laws. E.D. is a child with significant disabilities – including **Down syndrome and Sickle Cell-Hemoglobin C disease** – requiring coordinated medical care, therapy, and special education services. Yet, during the years that Wilson wrongfully held custody (2013–2020), E.D.'s **critical medical and developmental needs were neglected**. Wilson's fraudulent custody meant that she was the point of contact for E.D.'s healthcare, and she repeatedly **failed to secure timely treatment, therapy, and interventions** that E.D. needed. For example, important medical appointments were missed or delayed, and recommendations from specialists went unheeded, causing E.D.'s health to suffer. Plaintiff was ready and willing to manage her daughter's care, but was **prevented from doing so** by Wilson's interference and the court's orders. Defendant **Children's Medical Center Dallas** compounded this harm by unlawfully **restricting Plaintiff's parental rights** in the medical context. Relying on Wilson's apparent authority as managing conservator, the hospital and its staff (including Defendant Ethel Jernigan, a social worker) **excluded Plaintiff from medical decisions** regarding E.D. and at times refused to communicate with her about her daughter's condition. On one occasion, Children's Medical Center even **filed a baseless "medical neglect" report** against Plaintiff (the natural mother) at Wilson's urging – despite clear evidence that Plaintiff was not neglecting E.D., and that any lapses in E.D.'s care were due to Wilson's own neglect of the child's special needs. This improper action by the hospital **blocked Plaintiff from accessing E.D.'s medical information and advocating for her care**, effectively stripping away Plaintiff's rights as a parent to protect her disabled child. Such conduct violated **Title II of the ADA, 42 U.S.C. § 12132**, which prohibits public entities (and those acting in concert with them) from denying benefits or participation on the basis of disability. Here, E.D. was denied the benefit of having her **mother assist in her medical care and decision-making**, an accommodation that was necessary due to E.D.'s disabilities and Wilson's demonstrated inability to meet those needs. Furthermore, throughout the legal proceedings from **2013 through 2023**, the Texas courts and agencies involved **failed to provide reasonable accommodations** for the disabilities impacting the family. Plaintiff **repeatedly notified the courts and the OAG** of circumstances requiring accommodation – including her high-risk pregnancy in 2016 (a temporary disability affecting her ability to attend hearings) and the necessity to account for E.D.'s special needs in any custody arrangement – yet these pleas were **ignored or dismissed**. No modifications to schedules, formats (such as allowing remote participation for Plaintiff when she was hospitalized), or support services were offered to enable full and fair participation by the disabled

child or by Plaintiff as a mother managing her own medical challenges. By disregarding their ADA obligations, Defendants **deprived both Plaintiff and E.D. of equal access to justice and services**. The result was a series of court orders and institutional decisions that failed to protect a vulnerable child's well-being and **exacerbated the emotional and physical strain on Plaintiff**, who was left struggling to assert her rights without the accommodations needed to level the playing field. These failures directly contributed to the prolonged separation of mother and child, the deterioration of E.D.'s health, and the severe emotional distress endured by Plaintiff.

**2020 Contempt Ruling and Continued Financial Harm to Plaintiffs**

It was not until 2020 – roughly **eight years after Wilson's initial fraud** – that the house of cards built on Wilson's lies began to collapse. In 2020, Plaintiffs (with the assistance of advocate **Tommy Carter**) brought Wilson's non-compliance with court orders to light and **moved for enforcement** of the 2017 custody order. The 303rd District Court (now with Judge **Ladeitra Adkins** presiding) found that **Wilson was in contempt of court** for her ongoing violations, which included **refusing to facilitate Plaintiff's visitation** with E.D. and **illegally removing the child from the county**. Faced with possible sanctions for contempt, Wilson finally **relinquished physical custody of E.D. back to Plaintiff** in or around 2020. This enforcement victory confirmed what Plaintiff had asserted all along – that Wilson was acting in bad faith and against the child's best interests – and it **partially remedied the wrongful deprivation** of Plaintiff's rights by restoring E.D. to her rightful home. However, even after E.D. was returned to her mother, **Plaintiffs continued to suffer financial and legal harm** from the aftermath of the fraudulent custody scheme. Despite the change in physical custody, the prior support orders against Plaintiff and her husband were **not immediately vacated**. Plaintiffs were still being treated as obligors under the defunct 2017 order, including an obligation for **medical support payments** (money intended to cover E.D.'s health insurance and medical expenses) that no longer made sense once E.D. was back under Plaintiff's care. When Plaintiffs petitioned the court to terminate these support obligations and formally recognize the custody reversal, Judge Adkins **wrongfully refused to grant full relief**. Instead, Judge Adkins upheld the requirement that Plaintiffs continue paying **child support and medical support** arrears that had accrued during Wilson's tenure – effectively penalizing Plaintiffs financially for the very period that Wilson wrongfully kept their child. Even more egregious, Judge Adkins ordered that Wilson would **retain court-ordered visitation rights** with E.D., despite Wilson's proven misconduct and contemptuous behavior. In other words, the court **rewarded the wrongdoer** by allowing Wilson ongoing access to the child and a continued stream of support-related funds, while Plaintiffs – who had finally regained their daughter – were **forced to finance the arrangement and endure ongoing intrusion** by Wilson. This state of affairs has inflicted continuing **economic harm** on Plaintiffs (in the form of unnecessary support payments and legal expenses) and **emotional harm** in requiring them to facilitate contact with the individual who defrauded them and endangered their child. The failure of the court to promptly correct the support orders and visitation in light of Wilson's contempt **underscores the systemic biases and procedural failures** at play. Plaintiffs were entitled to relief once the fraud was exposed and their rights vindicated, yet they have been made to **suffer additional losses even post-2019/2020**, in blatant disregard of principles of equity and justice.

> **In summary,** the above additional factual allegations demonstrate a **pattern of fraud, abuse of process, and disregard for civil rights** that underpins Plaintiffs' claims. Wilson's initial welfare fraud and unlawful custody grab set off a chain reaction of **due process violations**, as state actors (the OAG and judiciary) elevated financial interests and expediency over the rule of law. Throughout the protracted litigation, Defendants ignored or violated obligations under the **U.S. Constitution and the ADA**, failing to protect a disabled child's welfare or accommodate legitimate disabilities, and instead

persecuting the fit parents who sought only to care for their daughter. As a direct result of these factual circumstances, Plaintiffs have suffered egregious harm – including the **loss of companionship with their child, out-of-pocket financial losses, emotional distress, and denial of their civil rights** – for which they now seek redress in this Court.

**LEGAL CLAIMS WITH SPECIFIC STATUTES AND CASE LAW**

---

**COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) (42 U.S.C. § 12132)**

**(Against All Defendants)**

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Under Title II of the **Americans with Disabilities Act (ADA), 42 U.S.C. § 12132**, and its implementing regulations at **28 C.F.R. Part 35**, **public entities** must not **discriminate against individuals with disabilities** and must provide **reasonable accommodations** to ensure **equal access** to **programs and services**.

3. Plaintiff's daughter, **E.D.**, is a **qualified individual with a disability** under the ADA due to **Down syndrome** and **Sickle Cell-Hemoglobin C disease**, which **substantially limit major life activities**, including **learning, communication, and health management**. Plaintiff's **high-risk pregnancy** in 2016 also constituted a **temporary disability**, entitling her to **reasonable accommodations** during court proceedings.

4. Defendants, including **Judge Denise Garcia, Judge Ledetra Atkins, Tiffany White**, and **Children's Medical Center Dallas, failed to provide reasonable accommodations**, violating the ADA by:

    • Denying **E.D.** access to appropriate **medical care and educational services**.

    • Failing to modify court procedures to accommodate Plaintiff's **pregnancy-related disabilities**, as mandated by **Tennessee v. Lane**, 541 U.S. 509 (2004), where the Supreme Court held that courts must provide accommodations for **disabled individuals** to participate fully in **legal proceedings**.

    • Refusing to consider E.D.'s **special needs** in all **court orders and custody determinations**, a violation of **Olmstead v. L.C.**, 527 U.S. 581 (1999), which emphasizes **community-based treatment and accommodations** under the ADA.

5. As a result, Plaintiff and E.D. were **denied access to essential services**, causing **substantial harm**, including **emotional distress, financial loss**, and **continued exposure to discrimination**.

---

COUNT II: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

(Against Governmental Defendants and Associated Individuals)

6. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

7. 42 U.S.C. § 1983 provides a civil action for the deprivation of constitutional rights under color of state law. Defendants, acting under color of state law, engaged in conduct that deprived Plaintiff and her daughter of their constitutional rights, including:

- Denial of Due Process Rights (Fourteenth Amendment) by issuing default judgments without proper notice, accommodation, or opportunity to be heard, violating principles set forth in Goldberg v. Kelly, 397 U.S. 254 (1970).

- Violation of Equal Protection Rights by failing to treat Plaintiff and E.D. equally, as required by City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985), which prohibits discriminatory treatment of disabled individuals.

- Conspiracy Against Rights under 18 U.S.C. § 241, wherein Defendants colluded to maintain fraudulent custody orders favoring Wilson, despite her criminal history and lack of legal standing, demonstrating a conspiracy to violate civil rights under Dennis v. Sparks, 449 U.S. 24 (1980).

---

COUNT III: VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729)

(Against Lazat Wilson, Texas Attorney General's Office, and Legal Aid of Northwest Texas)

8. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

9. The False Claims Act (FCA) prohibits the presentation of false claims to the federal government for payment or approval. Defendants knowingly participated in false claims by:

- Submitting false information to obtain TANF, SNAP, and Medicaid benefits without legal custody of E.D.

- Facilitating fraudulent child support actions through false representations and conspiring to defraud federal programs, violating United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943).

- The Texas Attorney General's Office enabled these violations by pursuing financial incentives under Title IV-D, prioritizing federal reimbursement over legal and ethical responsibilities.

10. Plaintiff, acting as a whistleblower, is entitled to protection under 31

U.S.C. § 3730(h) and seeks relief under the FCA's **qui tam provisions**, including **treble damages**, **civil penalties**, and recognition as a **federal whistleblower**.

---

### COUNT IV: FRAUD AND MISREPRESENTATION

**(Against Lazat Wilson and Collaborating Defendants)**

    11.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

    12.    **Lazat Wilson**, along with **Ethel Jernigan**, **Tiffany White**, and **Legal Aid of Northwest Texas**, engaged in **common law fraud** by:

- Making **false statements and representations** to obtain **public assistance benefits** and **custody orders**.

- Submitting **fraudulent documents** to the **courts** and **state agencies**, violating principles in **Doe v. Boys Clubs of Greater Dallas, Inc.**, 907 S.W.2d 472 (Tex. 1995).

- **Concealing material facts**, including **Wilson's criminal background**, from the court, resulting in **harmful and unjust outcomes** for Plaintiff and her daughter.

---

### COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against All Defendants)**

    13.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

    14.    Defendants' conduct, including:

- The **unlawful removal of Plaintiff's daughter**,

- The **coercive legal actions** and **fraudulent child support orders**, and

- The **denial of ADA accommodations**,

constituted **extreme and outrageous behavior**, causing **severe emotional distress** to Plaintiff, in line with **Twyman v. Twyman**, 855 S.W.2d 619 (Tex. 1993).

---

### CRIMINAL PROSECUTION REQUESTS

Plaintiff formally requests that the **Department of Justice (DOJ)** and **Federal Bureau of Investigation (FBI)** investigate potential **criminal violations**, including:

- Perjury (18 U.S.C. § 1621) for **false testimony and affidavits** submitted to the court.

- **Wire Fraud** (18 U.S.C. § 1343) and **Benefit Fraud** (18 U.S.C. § 641) for **misappropriating federal funds** through **Title IV-D programs**.

- **Conspiracy Against Rights** (18 U.S.C. § 241) for **colluding to deny Plaintiff's civil rights** through **fraudulent custody and support orders**.

- **Kidnapping via Custody Interference** (18 U.S.C. § 1201) for **removing E.D. from the jurisdiction** without court authorization.

---

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendants, including:

- **Compensatory and punitive damages** totaling **$350 million**.

- **Treble damages** and **statutory penalties** under the **False Claims Act**.

- **Injunctive relief** to mandate **policy changes and training** within the **Texas Attorney General's Office, Legal Aid of Northwest Texas, and Children's Medical Center Dallas**.

- An **order establishing a Special Needs Trust** for E.D., ensuring **financial stability** and **protection of her disability benefits**.

- Recognition of Plaintiff as a **federal whistleblower**, including **financial incentives** provided under the **FCA's qui tam provisions**.

- **Attorney's fees, costs of litigation, and any other relief** deemed **just and proper**.

---

Robin Parker & Lapanis Davis
10057 Wyndbrook Drive.
Frisco, TX 75035
469-879-4147

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robin Day-wan Parker
Laparis Davis,
emorie Davis (minor)

**(b)** County of Residence of First Listed Plaintiff: **Collin**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro-se

## DEFENDANTS
The State of texas, et al

County of Residence of First Listed Defendant: **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

RECEIVED MAR 10 2025 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

Case No: 3-25CV0592-X

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS - PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- [X] 446 Amer. w/Disabilities - Other
- 448 Education

**TORTS - PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**PRISONER PETITIONS**
Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- [X] 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [X] 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- [X] 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983, 42 USC 654, 14th amendment

Brief description of cause:
Seeking damages for civil rights violations, HIPAA breaches, Fraud + Conspiracy

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 350,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: Ladeitra adkins
DOCKET NUMBER: DF-13-00814

DATE: _____
SIGNATURE OF ATTORNEY OF RECORD: _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____