**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROBIN PARKER, ET AL.,** | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 3:25-CV-592-X-BK** |
| | § | |
| **STATE OF TEXAS, ET AL.,** | § | |
| **DEFENDANTS.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil action was referred to the United States magistrate judge for case management, including the entry of findings and a recommended disposition. Upon review of the relevant pleadings and applicable law, this action should be **DISMISSED**.

**I. BACKGROUND**

On March 10, 2025, Plaintiffs Robin Parker and Laparis Davis filed a complaint against (1) the State of Texas, (2) the Children's Medical Center in Dallas and Plano, (3) Legal Aid of Northwest Texas, (4) State Judges Ladeitra Adkins and Dennise Garcia, (5) Social Worker Ethel L. Jernigan, (5) Attorneys Tiffany White, Lisa Harbour, and Susan Sylvester with the Office of the Texas Attorney General (Texas OAG), and (6) Lazat Wilson and Sylvester Brown. Doc. 3 at 1, 2-3. The complaint stems from state court proceedings that allegedly deprived Plaintiffs of the

custody of their minor, special needs daughter, E.D., from 2013 to 2020. *See State v. Laparius Davis*, No. DF-1300814 (303rd District Court, Dallas Cnty.).[1] Doc. 3 at 5, 12.

Plaintiffs also filed motions for leave to proceed *in forma pauperis* and for appointment of counsel. Doc. 5; Doc. 6. On March 14, 2025, they moved to supplement the complaint to include additional facts and evidence from the state proceedings. Doc. 7. The evidence consists of 12 attachments, totaling over 200 pages. Doc. 8 through Doc. 19. Plaintiffs also moved to compel discovery, to expedite, for service of process, and to supplement their motion to proceed *in forma pauperis*. Doc. 21; Doc. 22; Doc. 23; Doc. 24; Doc. 25.

Plaintiffs' complaint is, at best, inartfully pled. It not only asserts many convoluted claims spanning over a decade but seeks wide-ranging relief. Plaintiffs broadly allege "systemic discrimination, civil rights violations, and a conspiracy to defraud federally funded programs including Medicaid, SSI, Food Stamps, and Section 8 Housing." Doc. 3 at 1. They contend that the following statutes were violated: (1) 42 U.S.C. § 1983, (2) 42 U.S.C. § 12132, *et seq.*, Title II of the American with Disabilities Act (ADA), (3) 18 U.S.C. § 241 and 18 U.S.C. § 1201—federal criminal conspiracy and kidnapping, and (4) the False Claims Act, 31 U.S.C. §§ 3729, 3730(h). Doc. 3 at 2, 8. As to the latter, Plaintiffs aver that they are bringing this action as whistleblowers to "expos[e] a scheme by Defendants to fraudulently obtain financial incentives and reimbursements from federal programs by violating the rights of Plaintiff[s] and [their] special needs daughter." Doc. 3 at 1. Plaintiffs also complain of fraud/misrepresentation and intentional infliction of emotional distress and seek the investigation and prosecution of all Defendants. Doc. 3 at 10-12. As relief, Plaintiffs request compensatory and punitive damages,

---

[1] The Court takes judicial notice of the contents of the state court docket sheet, which is available on the Dallas County official website at: https://www.dallascounty.org/services/record-search/ (last accessed Mar. 14, 2025).

policy changes, "ADA compliance reforms," and "the establishment of a special needs trust to provide for [their] daughter's lifelong medical and educational needs." Doc. 3 at 2, 11.

As best the Court can glean, Plaintiffs allege that, in 2012, Defendant Wilson "unlawfully obtained public assistance benefits for [their] minor daughter, E.D., by falsely holding herself out as the child's caretaker despite having no legal custody or guardianship rights." Doc. 3 at 3; Doc. 7 at 2. Plaintiffs assert that this in turn led to baseless child support and custody proceedings by Wilson, who allegedly wrongfully held custody of E.D. from 2013 to 2020. Doc. 3 at 3-5; Doc. 7 at 2. Plaintiffs add that the Texas OAG issued an illegal child support order against Plaintiff Davis in 2013 and Judge Garcia filed a fraudulent default judgment against Plaintiffs in 2016 transferring custody of E.D. to Wilson. Doc. 3 at 3-5; Doc. 7 at 2. Plaintiffs also contend that (1) the OAG failed to investigate Wilson's custody status and criminal background, Doc. 3 at 3-4; (2) the state judges engaged in judicial misconduct and coercion during the custody proceedings, Doc. 3 at 5-6; and (3) Defendants failed to accommodate Plaintiffs' disabilities and neglected E.D.'s critical medical and developmental needs, Doc. 3 at 6.

Plaintiffs aver that in 2020, with help from an advocate, they exposed Wilson's non-compliance with court orders and Wilson relinquished physical custody of E.D. back to Plaintiffs. Doc. 3 at 7. Judge Adkins required, however, that Plaintiffs "continue paying child support and medical support arrears that had accrued during Wilson's tenure" and granted Wilson visitation rights. Doc. 3 at 7. Plaintiffs contend that the rulings penalized them financially and rewarded Wilson. Doc. 3 at 7.

> In summary, the above . . . allegations demonstrate a pattern of fraud, abuse of process, and disregard for civil rights that underpins Plaintiffs' claims. Wilson's initial welfare fraud and unlawful custody grab set off a chain reaction of due process violations, as state actors (the OAG and judiciary) elevated financial

> interests and expediency over the rule of law. Throughout the protracted litigation, Defendants ignored or violated obligations under the U.S. Constitution and the ADA, failing to protect a disabled child's welfare or accommodate legitimate disabilities, and instead persecuting the fit parents who sought only to care for their daughter. As a direct result of these factual circumstances, Plaintiffs have suffered egregious harm - including the loss of companionship with their child, out-of-pocket financial losses, emotional distress, and denial of their civil rights - for which they now seek redress in this Court.

Doc. 3 at 7-8.

Despite their many allegations, however, the Court concludes that (1) jurisdiction is lacking to invalidate orders issued in the state court proceedings, (2) Plaintiffs cannot sue *pro se* under the False Claims Act and on behalf of their minor daughter, and (3) Plaintiffs' remaining claims are frivolous and fail to state a claim. Therefore, this action should be dismissed.[2]

## II. ANALYSIS

### A. *Rooker-Feldman* Doctrine

The Court should always examine, *sua sponte*, if necessary, the threshold question of whether it has subject matter jurisdiction. *The Lamar Co., L.L.C. v. Mississippi Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Construing Plaintiffs' complaint to assert claims that their civil rights were violated in or in relation to the prior state court proceedings, such claims are barred by the *Rooker-Feldman* doctrine.[3] The *Rooker-Feldman* doctrine is jurisdictional and "holds that inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Nat'l*

---

[2] Because disposition here turns on the lack of jurisdiction as to some claims and the failure of the remainder to state legally cognizable claims, the Court does not address the deficiencies in Plaintiffs' complaint and motion for leave to proceed *in forma pauperis*.

[3] The doctrine and its title arises from decisions in two cases—*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

*Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted). A federal complaint, even if framed as containing original claims for relief, attacks a state-court judgment for purposes of the *Rooker-Feldman* doctrine "when the [federal] claims are inextricably intertwined with a challenged state court judgment, or where the losing party in a state court action seeks what in substance would be appellate review of the state judgment." *Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (alteration in original) (internal citations and quotation marks omitted). Simply stated, a plaintiff cannot circumvent the *Rooker-Feldman* doctrine merely by recasting a complaint in the form of a federal civil rights action. *Moore v. Whitman*, 742 F. App'x 829, 832 (5th Cir. 2018) (per curiam) (citations omitted). Moreover, errors in state cases should be reviewed and settled through the state appellate process. *Rooker*, 263 U.S. at 415; *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) ("'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" (quoted case omitted)).

Plaintiffs essentially request that this Court invalidate two orders issued in the state court proceedings—the 2013 child support order and the 2016 default judgment order transferring custody of E.D. to Wilson. Doc. 3 at 3-5; Doc. 7 at 2. As such, Plaintiffs' claims related to these orders clearly fall within the ambit of the *Rooker-Feldman* doctrine, and this Court lacks jurisdiction to consider them. *See, e.g.*, *Moore*, 742 F. App'x at 832 (finding civil rights claims against foster parents and state officials involved in removal and placement of child were "inextricably intertwined" with the state-court judgment and thus precluded by the *Rooker-Feldman* doctrine); *Glatzer v. Chase Manhattan Bank*, 108 F. App'x 204, 205 (5th Cir. Sept. 20, 2014) (per curiam) (affirming application of the *Rooker-Feldman* doctrine to dismiss a plaintiff's

constitutional claims implicating a custody and child support order because those claims were "inextricably intertwined with the state court order" (citations omitted)).

### B. False Claims Act *Qui Tam* Claims

Plaintiffs also plead *qui tam* claims under the False Claims Act against Defendants Wilson, the Texas OAG, and Legal Aid of Northwest Texas. Doc. 3 at 9-10. They allege the "Texas OAG knowingly submitted false claims for federal Title IV-D reimbursements while enforcing illegal support orders," and "Defendants double-dipped by collecting state and federal Medicaid reimbursements for E.D.'s care," in violation of 31 U.S.C. § 3729. Doc. 7 at 3; *see* Doc. 3 at 9. Additionally, Plaintiffs assert a claim of "whistleblower retaliation" under 31 U.S.C. § 3730(h), contending that "Defendants retaliated against Plaintiffs for exposing child support fraud, blocking access to medical records, and manipulating the courts[.]" Doc. 7 at 3; *see also* Doc. 3 at 10.

As *pro se* litigants, Plaintiffs cannot proceed as relators in a False Claims Act *qui tam* action on behalf of the United States. *United States ex rel. Brooks v. Ormsby*, 869 F.3d 356, 357 (5th Cir. 2017) (clarifying that in False Claims Act *qui tam* actions relators cannot proceed *pro se*). "[R]egardless of the right of anyone to represent himself *pro se*, [a relator] is not representing himself when he brings an action solely as relator for another non-intervening party, including the United States, and therefore cannot do so *pro se*." *Id.* (affirming dismissal of *pro se* relator's claims without prejudice). Accordingly, Plaintiffs' False Claims Act claims should be dismissed without prejudice.[4]

---

[4] Plaintiffs have also failed to meet the procedural requirements a private party must follow to pursue a *qui tam* action on behalf of the federal government. *See* 31 U.S.C. § 3730(b); *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1016 (N.D. Tex. 2013) (dismissing because plaintiffs failed to follow the procedures outlined in § 3730(b)).

**C. Claim(s) on Behalf of Minor Daughter E.D.**

Likewise, Plaintiffs cannot sue on behalf of their minor daughter. Plaintiffs allege that E.D. was denied access to essential services in violation of the ADA. Doc. 3 at 8. They list E.D. as a plaintiff on the civil cover sheet but not in the complaint. Doc. 3 at 12, Doc. 3 at 1-2.

Generally, a party "cannot be represented by a nonlawyer[.]" *Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 283 (5th Cir. 2023) (discussing 28 U.S.C. § 1654 (citation and quotations omitted)). More significantly, nonlawyer parents are generally prohibited from representing minor children. *Id.* at 282, 284 (citations omitted). But nonlawyer parents may pursue a claim on behalf of their children where federal or state law renders the children's cases the parent's "own." *Id.* at 282, 284-86 (noting that other federal and state law "can overwrite the general rule against *pro se* parent representation"). This condition is met if federal or state law designates a plaintiff's child's case as belonging to the parent. *Id.*

In their complaint, Plaintiffs have cited no authority showing, or pleaded facts establishing, that their minor daughter's claim(s) may be pursued as their own. Therefore, their minor daughter's claim(s), if any, should be dismissed without prejudice.[5]

**D. Remaining Claims Fail to State a Claim**

Because Plaintiffs seek leave to proceeding *in forma pauperis*, their remaining claims are subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for the *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is

[5] The 14-day statutory objection period will permit Plaintiffs to proffer any authority or plausible facts establishing, that their minor child's claim(s) may be pursued as their own. Plaintiffs may also obtain counsel to represent the interests of their minor child and file a separate action on her behalf.

immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law when it is premised "on an indisputably meritless legal theory," *Id.* at 327, and fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court must always liberally construe pleadings filed by *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even under the most liberal construction, however, Plaintiffs' remaining claims are frivolous and fail to state a claim.

*i. Personal Injury and Civil Rights Claims*

Plaintiffs' personal injury and civil rights claims (under both 42 U.S.C. § 1983 and Title II of the ADA, 42 U.S.C. § 12132) are time barred. The Court "may raise the defense of limitations *sua sponte* . . . [and] [d]ismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (quotations and quoted case omitted). A two-year limitations period applies to personal injury claims under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) (providing two-year limitations period for personal injury claims). Likewise, any claims under § 1983 and Title II of the ADA are barred by the two-year statute of limitations. *Stanley*, 464 F.3d at 568 (finding § 1983 actions in Texas are governed by Texas two-year personal injury limitations period); *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (same under Title II of the ADA).

Plaintiffs maintain the events at issue occurred between 2013 and 2020. Thus, the deadline to file suit for personal injury and civil rights violations was at the latest in 2022. But Plaintiffs did not file this action until March 10, 2025—more than two and one-half years outside the applicable limitations' period.

Plaintiffs cannot demonstrate that they are entitled to equitable tolling of the statute of limitations period because of a "legal disability." *See* TEX. CIV. PRAC. & REM. CODE § 16.001(a) ("[A] person is under a legal disability if the person is: (1) younger than 18 years of age, regardless of whether the person is married; or (2) of unsound mind."). Therefore, Plaintiffs' personal injury and civil rights claims fail to state a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (when the allegations "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

Plaintiffs' claims against the state judges also run headlong into judicial immunity. Although the complaint presents many grievances and conspiracies, Plaintiffs clearly assert claims that arise directly from Judges Adkins' and Garcia's actions taken in their official capacities. Plaintiffs' allegations and claims against the judges arise directly from rulings in state proceedings decided by the judges in their respective judicial capacity and function. *See Stump v. Sparkman*, 435 U.S. 349, 361-62 (1978). Thus, Plaintiffs' claims against Judges Adkins and Garcia—whether for injunctive, declaratory, or monetary relief—are barred by judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Wightman v. Jones*, 809 F. Supp. 474, 476-79 (N.D. Tex. 1992).

Further, while Plaintiffs complain of widespread conspiracies, "[a]llegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). Simply stated, Plaintiffs fail to allege specific,

nonconclusory facts that if proven, would establish there was an agreement among the Defendants to violate their federal civil rights. *See Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) ("Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983.") (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1023–24 (5th Cir. 1982)).

*ii. Federal Criminal Statutes and Investigation*

To the extent that Plaintiffs request a criminal investigation and allege criminal law violations under 18 U.S.C. §§ 241 and 1201 (criminal conspiracy and kidnapping), their claims lack any legal basis. Criminal statutes do not create a private right of action. For a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975), *overruled in part by Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979); *see Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (concluding that the party seeking to imply a private right of action bears the burden to show that Congress intended to create one). Plaintiffs have pled nothing here that would even come close to meeting that burden. *See also Williams v. Cintas Corp.*, No. 3:07-CV-0561-M, 2007 WL 1295802, *2 (N. D. Tex. Apr. 10, 2007) (collecting cases finding no private cause of action for perjury in federal court and no private right of action for civil perjury under Texas law), *R. & R. accepted*, 2007 WL 1300780, at *1 (N. D. Tex. May 02, 2007). Moreover, "decisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, as a private citizen, [the plaintiff] has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Gill v. Texas*, 153 F. App'x 261, 262-63 (5th Cir. 2005).

*iii. Fraud*

Next, Plaintiffs assert that Defendants Wilson, the social workers, and Legal Aid of Northwest Texas engaged in common law fraud by (1) making false statements to obtain public assistance benefits and custody orders, (2) submitting fraudulent document to the courts and state agencies, and (3) concealing material facts, including Wilson's criminal background. Doc. 3 at 10. First, Plaintiffs' fraud claims are barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE § 16.004(a)(4); *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008). Plaintiffs maintain the alleged fraud occurred between 2013 and 2020. So the deadline for filing suit was at the latest in 2024. But Plaintiffs did not file this action until March 10, 2025.

Second, Plaintiffs' conclusory allegations do not satisfy Rule 9(b)'s requirement to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." (quotations and quoted case omitted)). Indeed, Plaintiffs present "threadbare recitals" of fraud, which are simply insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (concluding "the well-pleaded facts [in the complaint] do not permit the court to infer more than the mere possibility of misconduct"). Accordingly, Plaintiffs' fraud claims lack an arguable legal basis and fail to state a claim to relief that is plausible on its face.

**III. LEAVE TO AMEND**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint before dismissal, but leave is not required when he has already pled his "best case." *Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009). As demonstrated above, based on the legal theories Plaintiffs posit, subject matter jurisdiction is lacking over some of their claims and the remaining claims lack an arguable basis in law or cannot, as a matter of law, state a plausible legal claim. Based on the most deferential review of their complaint and supplemental filings, it is highly unlikely that, given the opportunity, they could allege cogent and viable legal claims. Under these circumstances, the Court can only conclude that Plaintiffs have already pled their best case and that granting leave to amend would be futile and cause needless delay.

**IV. CONCLUSION**

For all these reasons, Plaintiffs' claims that seek to invalidate orders issued in state court proceedings should be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. *See* FED. R. CIV. P. 12(h)(3). Plaintiff's claims under the False Claims Act and on behalf of their minor daughter should be **DISMISSED WITHOUT PREJUDICE** because Plaintiffs cannot sue *pro se*. Further, Plaintiff's remaining claims should be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**SO RECOMMENDED** on March 28, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).