IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBIN PARKER, ET AL., | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:25-CV-592-X-BK |
| | § | |
| STATE OF TEXAS, ET AL., | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil action was referred

to the United States magistrate judge for case management, including the entry of findings and a

recommended disposition.  The Court granted Plaintiffs leave to proceed *in forma pauperis* but

did not issue process pending screening.  As detailed below, this action should be **DISMISSED**.

**I. BACKGROUND**

In March 2025, Plaintiffs Robin Parker and Laparis Davis filed this suit raising claims

stemming from state court proceedings that deprived them of custodial rights over their minor,

special needs daughter, E.D., from 2013 to 2020, and resulted in the opening of Title IV-D child

support cases.  Doc. 3; *State v. Davis*, No. DF-1300814 (303rd Dist. Ct., Dallas Cnty.).  Even

though the undersigned recommended the action be dismissed, Plaintiffs amended the complaint

and the Court found as moot the recommendation on the original complaint.  Doc. 33; Doc. 51.

In the Second Amended Complaint (the controlling pleading), Plaintiffs now sue:  (1) the

State of Texas, (2) the Office of the Texas Attorney General Child Support Defense Division

(Texas OAG) and Assistant Attorney General Logan Riley Nutt (Nutt), (3) the Texas Health and

Human Services Commission (Texas HHSC) and Jack McDaniel with Office of the Inspector

General, (4) the Children's Medical Center (CMC) and Social Worker Ethel L. Jernigan and Privacy Officer Elizabeth Dougharty, (5) the Legal Aid of Northwest Texas (LANWT) and Staff Attorney Megan Nordyke, (6) Judge LaDeitra Adkins of the 303rd District Court and Judge Dennise Garcia, the former presiding judge, (8) Lazat Wilson, the estranged mother of Plaintiff Parker, (9) Sylvester Brown, Wilson's boyfriend, (10) the U.S. Administration for Children and Families (ACF) and T. Johnson, and (11) ten John Does. Doc. 64 at 1, 8-11.

Plaintiffs assert a wide array of federal and state claims that arose out of the state dispute involving child custody and child support rulings. Doc. 64. As in the original complaint, they broadly state many long-winded claims, spanning over a decade, and requesting wide-ranging relief. *Id*. Plaintiffs also move to appear on behalf of their minor daughter but withdraw their whistleblowers claims under the False Claims Act. Doc. 72 at 1; Doc. 73 at 1-2.

Plaintiffs generally allege "systemic fraud and retaliatory enforcement" and "seek comprehensive relief for constitutional violations, retaliation, fraud, medical obstruction, and systemic abuse" of the federal benefit system. Doc. 64 at 5. They assert federal violations under (1) 42 U.S.C. § 1983, (2) Title II of the American with Disabilities Act (ADA), (3) Section 504 of the Rehabilitation Act (RA), (4) Civil RICO, (5) 42 U.S.C. § 407, and (6) whistleblower statutes. Doc. 64 at 6, 19-25, 27. Plaintiffs also raise several state-law claims. Doc. 64 at 6, 24-27. They request $350 million in damages and declaratory and injunctive relief. Doc. 64 at 28-32. Specifically, they ask the Court to find that "the OAG Title IV-D child support cases are unlawful, void, and unenforceable due to fraud, misclassification, and denial of due process" and that the March 2016 and June 2017 custody orders are "void ab initio." Doc. 64 at 28-29.

Plaintiffs contend that, in 2012, Wilson "fraudulently submitted" (1) "a Temporary Assistance for Needy Families (TANF) application and Medicaid enrollment using E.D.'s

identity" and (2) "a fraudulent child support application falsely claiming herself as E.D.'s legal guardian." Doc. 64 at 12.  These filings allegedly led to HHSC misclassifying E.D. as a "TANF-dependent" instead of an "SSI recipient." Doc. 64 at 12.  The misclassification supposedly "triggered a series of unlawful child support enforcement actions[.]" Doc. 64 at 13.  Then, in 2016, Judge Garcia awarded guardianship of E.D. to Wilson, which Plaintiffs insist was wrongful, and the OAG pursued child support cases against Plaintiff Davis, garnishing his wages and threating incarceration. Doc. 64 at 13-4.  According to Plaintiffs, in 2021, they obtained a contempt ruling against Wilson for custodial interference which allegedly confirmed their legal rights and abated child support and cash medical reimbursements. Doc. 64 at 14.  They contend that the OAG and HHSC continued enforcement actions against Davis, however. Doc. 64 at 14.  Plaintiffs further assert that in 2025, the OAG escalated enforcement against Davis after Plaintiffs filed formal complaints with the HHSC Office of the Inspector General and other federal agencies. Doc. 64 at 14-16.

## II. JURISDICTION IS LACKING IN PART

The Court should always examine, *sua sponte*, if necessary, the threshold question of whether it has subject matter jurisdiction. *The Lamar Co., L.L.C. v. Mississippi Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The plaintiff, as the party asserting subject-matter jurisdiction, bears the burden of establishing that subject matter jurisdiction exists. *See Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

Likewise, the Court must always liberally construe pleadings filed by *pro se* litigants. Even under the most liberal construction, however, the Court lacks jurisdiction over all claims against the State of Texas, its entities, judges, and state officials.

### A.  Sovereign Immunity of State of Texas and State Entities and Officials

Plaintiffs' claims against the State of Texas, the various state entities, and their employees in their official capacity are barred either by sovereign or absolute immunity.  The State of Texas and the OAG and HHSC, as arms of the State of Texas, are not a "person" amenable to suit under 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment bars suit against a state or state entity, whether money damages or injunctive relief is sought.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984) (in absence of consent, the Eleventh Amendment bars suit in federal court in which a state or one of its agencies or departments is named as defendant).  Likewise, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Therefore, Plaintiffs cannot sue the State of Texas, the OAG, the HHSC, their employees in their official capacity (Nutt and McDaniel), and the state judges in their official capacity for monetary damages and declaratory or injunctive relief.  As such all federal and state claims against these Defendants should be dismissed for lack of jurisdiction.

### B.  Prosecutorial Immunity of Assistant Attorney General

Similarly, a prosecutor is entitled to absolute immunity "for actions 'initiating a prosecution and … presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'"  *Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).  This immunity "shelters prosecutors even when

they act 'maliciously, wantonly or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (citations omitted).  And this immunity applies to prosecutors in the OAG child support division.  *See Nixon v. Abbott*, 589 F. App'x 279, 280 (5th Cir. 2015) (per curiam); *Ramirez v. Arteaga*, No. 3:23-cv-2617-X-BN, 2023 WL 11931496, at *2 (N.D. Tex. Dec. 1, 2023), *adopted*, 2024 WL 421959 (N.D. Tex. Sep. 16, 2024).

Although a prosecutor is entitled only to qualified immunity for certain administrative activities, *see Van de Camp v. Goldstein*, 555 U.S. 335, 343 (2009), Plaintiffs' allegations against Assistant Attorney General Nutt relate to alleged misrepresentations in court, which is part of the prosecution of the State's case.  Doc. 64 at 9 (alleging Nutt presented false information in court, obstructed enforcement of valid orders); Doc. 64 at 15 (asserting Nutt misrepresented matters during a hearing).  Moreover, the assertions that Nutt supposedly retaliated against them in response to whistleblower activity all relate to how the child-custody case(s) against them were brought.  Because Plaintiffs point to no action that Nutt performed outside the scope of his prosecutorial duties, all retaliation claims are barred by prosecutorial immunity.  *See, e.g.*, Doc. 64 at 9 (alleging Nutt "retaliate[ed] against Plaintiffs for engaging in protected legal activity"); Doc. 64 at 14-15 (summarizing escalation of enforcement action by the OAG to collect child support arrears in 2025).  Thus, the claims against Nutt, in his individual capacity, are barred by prosecutorial immunity and should be dismissed for lack of jurisdiction.

### C. Absolute Immunity of State Judges

Plaintiffs' claims against the state judges, in their individual capacity, run headlong into judicial immunity.  Although the complaint presents many grievances and allege several conspiracies, Plaintiffs clearly assert claims that arise directly from Judges Adkins' and Garcia's actions taken in their official capacities.  Doc. 64 at 4, 9, 13.  Plaintiffs' allegations and claims

against the judges stem entirely from rulings issued by the judges in their respective judicial capacity and function as presiding judge in those proceedings.  *See Stump v. Sparkman*, 435 U.S. 349, 361-62 (1978).  This immunity extends even for judicial acts alleged to have been done maliciously, corruptly, or in error, as Plaintiffs seem to suggest.  *Mireles*, 502 U.S. at 11-12.  Judicial immunity is overcome only where (1) the judge acts in the clear absence of all jurisdiction, or (2) the challenged act is not a judicial act at all.  *Id.*  Absolute immunity attaches to the nature of the act, not to its perceived propriety or the motives attributed to it.  *Mireles*, 502 U.S. at 11.  Notably, neither exception applies here.

Even when liberally construed, Plaintiffs plead no plausible fact that the Judges acted outside their jurisdiction or that the challenged conduct was unrelated to their judicial function.  Consrquently, Plaintiffs' claims against Judges Adkins and Garcia—whether for injunctive, declaratory, or monetary relief—are barred by judicial immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Wightman v. Jones*, 809 F. Supp. 474, 476-79 (N.D. Tex. 1992).  Plaintiffs' claims against the state judges should be dismissed.

### D.  Immunity of U.S. Administration for Children and Families

Plaintiffs also sue the U.S. Administration for Children and Families (ACF), a division of the U.S. Department of Health and Human Service, and T. Johnson, in his official capacity.  Doc. 64 at 11.  They assert that ACT and Johnson failed to investigate and intervene despite Plaintiffs' repeated whistleblower complaints.  Doc. 64 at 11.

Under the doctrine of sovereign immunity, the United States Government cannot be sued unless it gives its consent.  *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (quotations

and citations omitted)).  The sovereign immunity of the United States extends to its agencies.

*See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).   Similarly, Plaintiffs' official capacity claims

against Johnson, if any, are barred by sovereign immunity, because Johnson's actions in his

official capacity are considered those of his federal agency employer (the ACF).  *See Kentucky v.*

*Graham*, 473 U.S. 159, 165-67 (1985).

Because "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475,

Plaintiffs have the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany*

*Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).  Their bare allegations do not

identify a waiver of sovereign immunity, however, and the Court has found none.  Thus, subject

matter jurisdiction over Plaintiffs' claims against ACF and Johnson is lacking.

### E.  No Private Cause of Action Under 42 U.S.C. § 407

Next, Plaintiffs sue the OAG, HHSC, and their employees under 42 U.S.C. § 407.  Doc.

64 at 22.  But that section does not expressly create a private right of action to address statutory

violations of the Social Security Act and, thus, does not provide an independent basis for the

Court to exercise jurisdiction.  *See Galanova v. Portnoy*, 432 F. Supp. 3d 433, 446 (S.D.N.Y.

2020); *Huffman v. JP Morgan Chase Bank, NA*, No. CV-22-00903, 2023 WL 2691455, at *5 (D.

Ariz. Mar. 29, 2023) (collecting cases), *aff'd,* 2026 WL 396536 (9th Cir. Feb. 12, 2026).

### F.  Jurisdiction is also Lacking to Invalidate State Court Orders

#### 1.  *Rooker-Feldman* Doctrine

Plaintiffs assert civil rights and other violations that arose out of actions taken in

connection with state custody and child support cases.  Such claims are barred by the *Rooker-*

*Feldman* doctrine.  The *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction

to review state court orders.  *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000).  It "holds

that inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted).[1]

In their operative complaint, Plaintiffs again seek to invalidate orders issued in state court proceedings—precisely the 2013 child support order and the 2016 default judgment order transferring custody of E.D. to Wilson in Case No. DF13-00814.  Doc. 64 at 13-14.  Plaintiffs' claims for declaratory/injunctive relief related to these orders (and the associated Title IV-D child support enforcement cases) clearly fall within the ambit of the *Rooker-Feldman* doctrine, and this Court lacks jurisdiction to consider them.  *See, e.g.*, *Moore v. Whitman*, 742 F. App'x 829, 832 (5th Cir. 2018) (finding civil rights claims against foster parents and state officials involved in removal and placement of child were "inextricably intertwined" with the state-court judgment and thus precluded by *Rooker-Feldman*); *Glatzer v. Chase Manhattan Bank,* 108 F. App'x 204, 205 (5th Cir. 2014) (same as to constitutional claims implicating custody and child support order).

### 2. *Younger* Abstention

To the extent that the Title IV-D child support cases are not final, this Court should abstain from interfering in the state court proceedings under the *Younger* abstention doctrine. The *Younger* abstention doctrine prevents federal courts from "granting either injunctive or declaratory relief when state criminal actions or certain categories of state civil proceedings are pending against the federal plaintiff at the time that federal action is commenced."  *DeSpain v.*

---

[1] The doctrine and its title arises from decisions in two cases—*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).  Because Nelson's state appeal was dismissed, the *Rooker-Feldman* doctrine applies to his claims.  *Cf. Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) ("*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed.").

*Johnston,* 731 F.2d 1171, 1175 (5th Cir. 1984) (citing *Younger v. Harris*, 401 U.S. 37 (1971), and companion cases).  The doctrine "is based on considerations of equity, comity, and federalism."  *Id.* at 1175-76 (citing *Younger,* 401 U.S. at 43-45).  It requires that federal courts decline to exercise jurisdiction where three conditions are met:  (1) a state judicial proceeding is ongoing at the time that the plaintiff initiated the federal action, (2) the proceeding implicates important state interests, and (3) the proceeding affords an adequate opportunity to raise constitutional challenges.  *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).

The requested declaratory/injunctive relief regarding the child support cases satisfies *Younger* abstention requirements.  Plaintiffs state two of the cases are ongoing and the state has an important interest in family law proceedings.  Doc. 64 at 13-14.  *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").  Further, Plaintiffs have a full opportunity to raise constitutional challenges, if any, in the ongoing state proceedings.  *See DeSpain*, 731 F.2d at 1179 (finding constitutional challenges could be raised in state proceedings to remove a child and thus plaintiffs had an adequate opportunity to present the federal claims in state court).  Finally, Plaintiffs present only conclusory claims of constitutional violations.  *Cf. DeSpain*, 731 F.2d at 1180 ("A federal court should not abstain when the state court proceeding is brought in bad faith or with the purpose of harassing the federal plaintiff.").

The Court thus concludes that Plaintiffs fail to show that any exception to the *Younger* abstention doctrine is warranted, and the Court should abstain from exercising jurisdiction for federal and state claims directly or indirectly related to child support enforcement cases.

### III. REMAINING FEDERAL CLAIMS LACK FACIAL PLAUSIBILITY

Because Plaintiffs proceed *in forma pauperis*, their remaining claims are subject to screening under 28 U.S.C. § 1915(e)(2)(B).  That statute provides in part for the *sua sponte*

dismissal of a complaint if the Court finds that it fails to state claim upon which relief may be granted.  A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  But even when liberally construed, the remaining claims fail to state a claim.

### A.  Civil RICO

Plaintiffs broad-based allegations of Civil RICO fraud and conspiracy lack facial plausibility.  Doc. 64 at 23.  RICO creates a civil cause of action for any person whose business or property was injured by another's violation of 18 U.S.C. § 1962.  Plaintiffs rely on § 1962(c)-(d).  Regardless of subsection, RICO claims "have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citation omitted).  A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.  *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).

Plaintiffs assert that all Defendants, in their individual capacity, "engaged in a pattern of racketeering activity," including "mail and wire fraud, theft of government funds, identity theft, obstruction of justice, and retaliation against whistleblowers."  Doc. 64 at 23.  Aside from these conclusory allegations, they present no plausible facts tying any of the Defendants to the supposed racketeering activity.  Doc. 64 at 10-11.

Nor do Plaintiffs plead any non-conclusory facts showing that these Defendants agreed to form or advance a criminal enterprise, which dooms Plaintiffs' claims.  They merely allege that the conduct of the Defendants "constituted a RICO enterprise under 18 U.S.C. § 1961(4) with continuity over a decade (13 years)." Doc. 64 at 23.  This is insufficient.  *See* 18 U.S.C. § 1961(4) (defining "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"); *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) ("[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." (citation omitted)).

### B.  American with Disability Act (ADA) and Rehabilitation Act (RA)

Likewise, Plaintiffs' claims under the ADA and RA against CMC, LANWT, and "affiliated individuals" (the non-immune Defendants) lack facial plausibility.  Doc. 64 at 20.  Title II of the ADA prohibits discrimination against disabled individuals in public services.  42 U.S.C. §12132; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001).  Similarly, the RA prohibits discrimination against disabled individuals in federally funded institutions.  29 U.S.C. § 794(a).

Plaintiffs fail to allege plausible claims of disability discrimination under both statutes.  *See Iqbal*, 556 U.S. at 679 ("The well-pleaded facts" in the complaint must "permit the court to infer more than the mere possibility of misconduct.").  Apart from mentioning the word discrimination twice, they present no plausible facts supporting any inference of discrimination.  Specifically, Plaintiffs fail to connect any of the allegations against the Defendants to Plaintiffs' purported disabilities, the ADA, or the RA.  *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).  Plaintiffs also assert that Defendants misclassified E.D.'s Medicaid eligibility as TANF instead of SSI and that this hindered her access to medical care and home

healthcare referral.  Doc. 64 at 20.  But they do not assert facts showing that a public entity or a federally funded institution discriminated against them because of E.D.'s and Parker's alleged disabilities.

Additionally, Plaintiffs cannot sue persons in their individual capacities under the ADA or the RA.  *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (ADA does not authorize individual liability); *Lollar v. Baker*, 196 F.3d 603, 609-10 (5th Cir. 1999) (same under RA); *but see Cooper v. Hung*, 485 F. App'x 680, 685 (5th Cir. 2012) (per curiam) (distinguishing ADA and RA claims against an individual in his or her official capacity).

### C.  Retaliation and Interference with Whistleblower Rights

Lastly, Plaintiffs sue CMC, Jernigan, and Dougharty (the non-immune Defendants) under the ADA's anti-retaliation provision (42 U.S.C. § 12203), the federal Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)), and federal criminal retaliation laws (18 U.S.C. § 1513(e)).  Doc. 64 at 23-24.  Again, however, their allegations raise no plausible claim.

First, Plaintiffs present no credible facts tying CMC and its employees to any retaliation. Indeed, they concede that the OAG and HHSC primarily engaged in the alleged retaliatory conduct.  Doc. 64 at 24.  Further suits against individuals are unavailable under the ADA's anti-retaliation provision.  *See Salamah v. UT Sw. Med. Ctr.*, No. 3:24-CV-0477-D, 2025 WL 1211124, at *10 (N.D. Tex. Apr. 25, 2025) (citing *Forte v. Dall. Cnty. Cmty. Coll. Dist.*, 2007 WL 9712189, at *5 (N.D. Tex. Mar. 6, 2007) (collecting cases)).

Second, the purpose of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), is to "prohibit[ ] governmental agencies from taking adverse personnel actions against employees or applicants for employment because the employee or applicant disclosed information that the employee or applicant believed evidenced a violation of law by the

government or gross mismanagement of funds." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 376 (5th Cir. 2007).   Because Plaintiffs were not employees of a federal agency or applicants, they do not have a viable claim under the WPA.

Third, 18 U.S.C. § 1513(e) is a federal criminal statute that does not provide a basis for a private cause of action.  *See Rubio v. Wingstop GSR Rest.*, No. 3:24-CV-00660-K-BT, 2024 WL 2027487, at *3 (N.D. Tex. Apr. 1, 2024)*, adopted*, 2024 WL 1886545 (N.D. Tex. Apr. 30, 2024).

### IV. STATE-LAW CLAIMS SHOULD BE DISMISSED

A district court is not required to exercise supplemental jurisdiction over state-law claims if it dismisses all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Because all of Plaintiffs' federal claims should be dismissed, the Court should also decline to exercise jurisdiction over their remaining state-law claims for fraud, abuse of process, negligence, gross negligence, intentional infliction of emotional distress, breach of fiduciary duty, identity theft, custodial interference, unlawful concealment and transportation, and due course of law under the Texas Constitution.  *See* 28 U.S.C. § 1367(c)(3); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

### V. CLAIMS ON BEHALF OF MINOR DAUGHTER SHOULD BE DISMISSED

Plaintiff Parker has not met her "burden to establish that under [28 U.S.C. ]§ 1654, federal or state law authorizes her to proceed *pro se* on behalf of her child[]." *Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 286 (5th Cir. 2023).  In response to the deficiency Order, Parker only asserts that she is "the natural mother, legal guardian, and sole custodian of E.D., a child with disability whose rights are directly at stake in this matter[,]" and that E.D.'s claims are inextricably linked to Parker's own claims.  Doc. 73 at 1-2.  Because Parker fails to identify clear and ambiguous authority to proceed *pro se* on behalf of E.D., any claims she seeks

to bring on behalf of E.D. in a representative capacity should be dismissed without prejudice. *Garcia v. City of McAllen*, No. 7:25-CV-00364, 2026 WL 451524, at *10 (S.D. Tex. Jan. 16, 2026), *adopted*, 2026 WL 449146 (S.D. Tex. Feb. 13, 2026).

## VI. LEAVE TO AMEND

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint before dismissal, but leave is not required when he has already pleaded his "best case." *Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009). As outlined above, based on the legal theories Plaintiffs posit, subject matter jurisdiction is lacking over most of their claims and the remaining claims cannot, as a matter of law, state a plausible legal claim. In addition, Plaintiffs have twice amended their complaint. Based on the most deferential review of the operative complaint, it is highly unlikely that, given the opportunity, Plaintiffs could allege cogent and viable legal claims. Under these circumstances, the Court can only conclude that Plaintiffs have already pleaded their best case and that granting further leave to amend would be futile and cause needless delay.

## VII. CONCLUSION

For all these reasons, all federal claims against the State of Texas, the OAG, the HHSC, the ACF, McDaniel, Johnson, Nutt, and Judges Adkins and Garcia should be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction as barred by sovereign, absolute, or prosecutorial immunity, and under the *Rooker-Feldman* and the *Younger* abstention doctrines. *See* FED. R. CIV. P. 12(h)(3). The RICO claims against all Defendants and the remaining federal claims against CMC, LANWAT, Jernigan, Dougharty, Nordyke, Wilson, and Brown should be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Further, as no federal claims will remain, Plaintiff's state-law claims should likewise be **DISMISSED WITHOUT PREJUDICE**. 28 U.S.C. §

1367(c)(3). Lastly, all claims on behalf of Plaintiffs' minor daughter in a representative capacity should be **DISMISSED WITHOUT PREJUDICE**, because Plaintiffs lack authority to bring them on their minor daughter's behalf.

The Clerk of the Court is **directed** to terminate Marquita Darthard as a defendant.[2]

**SO RECOMMENDED** on March 14, 2026.

_RENEE HARRIS TOLIVER_
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).

---

[2] The complaint lists Darthard in the caption but alleges no claim against her. Doc. 64 at 1.